IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JO ANN GOTTSCHALL, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 11-5361 |
| | : | |
| READING EAGLE COMPANY, | : | |
| Defendant. | : | |

MEMORANDUM OPINION

RUFE, J.  MARCH 12, 2013

Plaintiff brings claims pursuant to the Age Discrimination in Employment Act ("ADEA")[1] (Count I) and the Pennsylvania Human Relations Act ("PHRA")[2] (Count II) alleging that Defendant improperly terminated her because of her age. Defendant has moved for summary judgment on all counts. For the reasons that follow, the Court will grant Defendant's motion and enter summary judgment in its favor.

I. FACTUAL BACKGROUND

The following facts are either undisputed or viewed in the light most favorable to Plaintiff.

Defendant Reading Eagle Company ("REC") is a media company, with its primary business being the operator and publishor of a daily newspaper, the *Reading Eagle*, in Reading, Pennsylvania.[3] Plaintiff Jo Ann Gottschall began working in REC's Accounting Department in 1974, immediately after graduating from high school.[4] She continued to work in the Accounting

---

[1] 29 U.S.C. §§ 621-634.

[2] 42 Pa. Stat. § 951 *et seq.*

[3] Statement of Stipulated Material Facts ("SSMF") ¶ 1.

Department, performing administrative and clerical functions, until 2000, when she applied for and obtained a position as an administrative assistant in REC's Executive Offices.[5] In or around March 2002, a representative in REC's Executive Office told Ms. Gottschall that her employment in the Executive Office was not "'working out' and that she could no longer work there."[6] Though REC's Accounting Department did not have an open position, Ms. Gottschall was permitted to return to the Department and work as a "floater," helping other members of the Department complete their work.[7] Ms. Gottschall thereafter assumed a position doing billing for transit advertisements, a position that became available when one employee retired and another moved out of state.[8]

In 2006, REC was faced with declining circulation and advertising revenue in its newspaper business, and as a result, REC laid off 21 employees company-wide.[9] According to Richard Auman, REC's Director of Circulation, the average age of all REC employees before and after the 2006 layoffs was approximately 48 years of age, and both before and after the 2006 layoff, approximately 76% of the workforce was 40 years of age or older.[10] REC's financial

---

[4] SSMF ¶ 2.

[5] SSMF ¶ 3.

[6] SSMF ¶ 4; Pl.'s Dep. 8-9, Feb. 23, 2012.

[7] SSMF ¶ 4; Pl.'s Dep. 9-10.

[8] Pl.'s Dep. 10.

[9] Auman Aff. ¶ 3; Auman Dep. 17-19, Mar. 1, 2012. In his Affidavit. Richard Auman states that REC laid off 18 employees in 2006 and 21 employees in 2008. Auman Aff. ¶¶ 3, 4. However, Exhibit 4 to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment is a list of employees laid off during one round of REC's RIF, along with their position, department, age at separation, years of service, and date of birth. Though the exhibit does not list the date of termination, it includes the names of 18 employees including Cheryl Bingaman and Robin Hackman, who were both general clerks in the Accounting Department and were both terminated during the 2008 round of layoffs. Pl.'s Dep. Coco. Aff. ¶ 3. Thus, it appears that Exhibit 4 is a list of the 2008 layoffs during which 18 employees were laid off. Exhibit 3 is a list of the 2006 layoffs and shows 21 employees were terminated at that time.

[10] Auman Aff. ¶ 3.

woes continued in 2008, and the Company terminated another 18 employees.[11] Among these employees were two General Clerks in REC's Accounting Department, Cheryl Bigaman, who was 58 years of age at the time of her termination, and Robin Hackman, who was 50 years of age at the time.[12] Aside from Ms. Gottschall, who was 52 at the time of the 2008 layoffs, these two women were the oldest non-supervisory employees in the Accounting Department.[13] The average age of all REC employees before and after the 2008 layoffs was approximately 47 years of age, and both before and after the 2008 layoff, approximately 76% of the workforce was 40 years of age or older.[14]

Throughout her tenure with REC's Accounting Department, Ms. Gottschall's supervisor was Benjamin Coco, who is 23 years Ms. Gottschall's senior.[15] Mr. Coco was responsible for deciding whose position would be terminated in the Accounting Department during the company-wide reduction in force ("RIF").[16] To reach his decision, Mr. Coco used a matrix format as directed by REC executives.[17] The matrix evaluation assigned employees points (from 0-6) in the following categories: (1) Work Quality; (2) Versatility; (3) Inter-Personal/Teamwork Skills; (4) Productivity; (5) Disciplinary Record (last 24 months only); and (6) Performance

---

[11] Auman Aff. ¶ 4. See footnote 9, supra.

[12] Pl.'s Resp. in Opposition to Def.'s Mot. Summ. J., Ex. 4; Coco Aff. ¶ 3; SSMF ¶¶ 5, 6.

[13] Pl.'s Statement of Material Facts ¶ 16; see generally Pl.'s Resp. in Opposition to Def.'s Mot. Summ. J., Ex. 4; Coco Aff. ¶ 8; SSMF ¶ 15.

[14] Auman Aff. ¶ 3.

[15] SSMF ¶¶ 2, 15.

[16] Auman Aff. ¶¶ 6-7; Coco Aff. ¶¶ 3-5.

[17] Auman Aff. ¶ 6; Coco Aff. ¶ 4.

evaluations.[18] Additionally, employees were given points for tenure with REC, one point for every five years with the Company with a maximum of 6 points awarded.[19] Based on his calculations, Mr. Coco selected Ms. Bigaman's and Ms. Hackman's positions for termination in 2008 because their employee matrix scores were the lowest in the Accounting Department.[20]

In 2009, REC, facing continued decline in revenue and increasing operational costs, determined that additional layoffs were necessary.[21] Mr. Coco was again directed to rank Accounting Department employees using the matrix.[22] At the time Mr. Coco completed his evaluations, the employees of the Accounting Department were: Plaintiff Gottschall (53 years of age); Mary Ernesto (49 years of age); Christine Heckman (47 years of age); Lynn Schitler (42 years of age); Geri Lynn Liszcz (41 years of age); and Jessica Thomas (30 years of age).[23] These employees received the following matrix scores: Gottschall (36 points); Ernesto (41 points); Heckman (37 points); Schitler (40 points); Licszc (39 points); and Thomas (38 points).[24] Ms. Gottschall, the oldest non-supervisory employee in the Accounting Department, received the lowest matrix score. As such, her position was selected for termination.[25] Mr. Coco states that Ms. Gottschall's age was not a factor in her ranking, or in her selection for layoff.[26]

---

[18] Pl.'s Resp. in Opposition to Def.'s Mot. Summ. J., Ex. 8.

[19] Id.; Auman Aff. ¶ 6; Coco Aff. ¶ 4.

[20] Coco Aff. ¶ 3.

[21] Auman Aff. ¶ 5; Auman Dep. 18-19.

[22] Coco Aff. ¶ 4.

[23] Pl.'s Statement of Material Facts ¶ 15; Auman Aff. ¶ 8.

[24] Pl.'s Resp. in Opposition to Def.'s Mot. Summ. J., Ex. 8; Pl.'s Statement of Material Facts ¶ 15.

[25] Coco Aff. ¶ 5; Auman Aff. ¶ 8.

[26] SSMF ¶ 5.

Ms. Gottschall was informed of Mr. Coco's decision in March 2009 by Mr. Auman and Mr. Coco.[27] Ms. Gottschall did inquire of Mr. Auman why she had been selected for termination out of everyone in the Department;[28] he responded that he "couldn't tell [her]."[29] Ms. Gottschall claims that Mr. Auman's failure to tell her about the matrix scores at that time is evidence that the claimed matrix system was not the true reason for Ms. Gottschall's termination, but was "concocted" as an after-the-fact explanation. Ms. Gotschall stresses that even though she never received a performance evaluation, she was the only member of the Accounting Department to receive a five in the matrix category of performance evaluations; all other employees received a six in this category.[30]

Mr. Auman maintains that he gave all employees who asked why they were selected for termination essentially the same answer: "that [he] was not in a position to provide specific details, but that REC was forced to make difficult decisions due to poor business conditions."[31] He further explains that he gave this answer because he did not want to insult employees by mentioning that they were selected for termination because they were ranked lower than other employees.[32] A total of 55 employees were "released" (six voluntarily) during REC's 2009 layoffs; the average age of all REC employees before and after the 2009 layoffs was

---

[27] Pl.'s Dep. 15-17.

[28] Pl.'s Dep. 17; Pl.'s Statement of Material Facts ¶¶ 8-9.

[29] Pl.'s Dep. 17; Pl.'s Statement of Material Facts ¶ 10.

[30] Pl.'s Resp. in Opposition to Def.'s Mot. Summ. J. at 12-13; Pl.'s Resp. in Opposition to Def.'s Mot. Summ. J., Ex. 9 at 11.

[31] Auman Aff. ¶ 9.

[32] Auman Aff. ¶ 9.

approximately 47 years of age, and both before and after the 2009 layoff, approximately 76% of the workforce was 40 years of age or older.[33]

There are two reasons Ms. Gottschall believed she was terminated because of her age: (1) she was the oldest employee in the Accounting Department; and (2) she believed she was one of the higher paid employees in the Department.[34] As to the latter, the parties have not presented any evidence about the salaries of REC Accounting Department employees with the exception of Ms. Gottschall, and in the Stipulated Statements of Material Facts, Ms. Gottschall admits she had no actual knowledge of the salaries of other Accounting Department employees.[35] As to the former, following the 2008 layoffs, Ms. Gottschall was the oldest nonsupervisory employee in the Accounting Department.[36] However, at the time of Ms. Gottschall's termination, her manager, Mr. Coco, and her supervisors, George Templin (67 years of age in March 2009), Leda Woolwine (64 years of age), and David Geschwindt (56 years of age) were all older than Ms. Gottschall.[37]

At her deposition, Ms. Gottschall testified that she believed she had a good relationship with her manager, Mr. Coco, who was never mean or disrespectful to her and who Ms. Gottschall believed would not discriminate against her because of her age,[38] but that Mr. Coco treated several younger employees more favorably than Plaintiff, allowing them to come in late,

---

[33] Auman Aff. ¶ 10.

[34] SSMF ¶ 10; Pl.'s Dep. 34-36, 43.

[35] SSMF ¶ 11.

[36] Coco Aff. ¶ 5; Auman Aff. ¶ 8.

[37] SSMF ¶ 15; Pl.'s Resp. in Opposition to Def.'s Mot. Summ. J., Ex. 10 at 4.

[38] Pl.'s Dep. 30-33; SSMF ¶¶ 7, 16.

6

leave early, and take doctor's appointments whenever they wanted.[39] Ms. Gottschall further testified that during her tenure at REC, no one, including Mr. Coco or her other supervisors, Mr. Templin, Ms. Woolwine, and Mr. Geschwindt, said or did anything that she considered mean, demeaning or inappropriate to her, and that before she was terminated no one at REC ever made any comments about her age or took any actions against her because of her age.[40] Before she was laid off Ms. Gottschall never felt that she was discriminated against because of her age and felt she had always been treated fairly.[41]

## II.   STANDARD OF REVIEW

Upon motion of a party, summary judgment is appropriate if "the materials in the record" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[42] Summary judgment may be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."[43] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[44] A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[45]

---

[39] Pl.'s Dep. 29-30; Pl.'s Statement of Material Facts ¶ 15; Auman Aff. ¶ 8.

[40] Pl.'s Dep. 32-33, 38; SSMF ¶¶ 8-9, 12.

[41] Pl.'s Dep. 43-44; SSMF ¶¶ 13-14.

[42] Fed. R. Civ. P. 56(a), (c)(1).

[43] Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).

[44] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[45] Id.

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[46] Further, a court may not weigh the evidence or make credibility determinations.[47] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[48] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[49] This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[50] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[51]

### III. DISCUSSION

"[T]he PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently."[52] As the parties recognize, "[t]he PHRA provisions here present no such issue, and

---

[46] Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

[47] Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998).

[48] Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

[49] Anderson, 477 U.S. at 249-50 (citations omitted).

[50] Walden v. Saint Gobain Corp., 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)).

[51] Celotex, 477 U.S. at 322; Wisniewski v. Johns–Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

[52] Burton v. Teleflex Inc., -- F.3d --- No. 11-3752, 2013 WL 616973, at *11 (3d Cir. Feb. 20, 2013) (quoting Slagle v. Cnty. of Clarion, 435 F.3d 262, 265 n.5 (3d Cir. 2006) (internal quotation marks omitted)).

therefore should be interpreted coextensively with [Ms. Gottschall's] ADEA . . . claim[]."[53] Accordingly, the Court will generally reference only the ADEA in this Opinion.[54]

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[55] An ADEA discrimination claim may be proved by either direct or indirect evidence of discrimination. Here, it is undisputed that Plaintiff has produced no direct evidence of discrimination.[56] Instead, Plaintiff attempts to prove her case with indirect evidence of discrimination. "Claims established by indirect evidence, as is the case here, are analyzed under the three-step process laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)."[57]

McDonnell Douglas sets forth a three-step process for analyzing ADEA claims sought to be proved using indirect evidence.[58] First, plaintiff must establish a *prima facie* case of age discrimination. In a reduction in force ("RIF") case such as this one, this requires proof of the following: (1) that plaintiff is a member of the protected class (i.e., that she is 40 years of age or older); (2) that plaintiff was qualified for the position she sought to retain; (3) that plaintiff suffered an adverse employment action; and (4) that plaintiff's employer retained a "sufficiently younger" employee.[59] Second, the burden of production shifts to the defendant to "articulate

---

[53] Id. (citing Colwell v. Rite Aid Corp., 602 F.3d 495, 499 n.3 (3d Cir. 2010)).

[54] Colwell, 602 F.3d at 499 n.3.

[55] 29 U.S.C. § 623(a)(1)

[56] SSMF ¶¶ 7-10, 12-14.

[57] Mindock v. Weir Minerals N. Am., No. 11-4416, 2012 WL 4903012, at *2 (3d Cir. Oct. 17, 2012) (citing Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009)).

[58] Id.

9

some legitimate, nondiscriminatory reason for the employee's rejection."[60] Finally, "[i]f the defendant does so, the inference of discrimination drops and the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for intentional discrimination."[61]

Here, Ms. Gottschall has met her initial burdening of establishing a *prima facie* case of age discrimination. It is undisputed (1) that Ms. Gottschall, who was 53 years of age when REC terminated her employment, is a member of the protected class, (2) that she was qualified for her position, having worked for REC in its accounting department for more than 30 years, (3) that she suffered an adverse employment action when REC terminated her employment in April 2009, and (4) that REC retained sufficiently younger employees, the youngest being more than 20 years younger than Ms. Gottschall.[62]

REC has also satisfied its burden of production by articulating a "legitimate, nondiscriminatory reason" for terminating Ms. Gottschall's employment; REC has explained that Ms. Gottschall was terminated as part of a companywide reduction in force.[63] More specifically, REC has shown that it engaged in three rounds of layoffs in 2006, 2008, and 2009,[64] and that in each round employees were selected for termination using a matrix that rated each employee's

---

[59] Anderson v. Consolidated Rail Corp., 297 F.3d 242, 249 (3d Cir. 2002).

[60] McDonnell Douglas, 411 U.S. at 802.

[61] Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008).

[62] SSMF ¶ 2; Pl.'s Statement of Material Facts ¶¶ 1-4, 14-15; Pl.'s Depo. 34-35; Pl.'s Resp. to Def.'s First Set of Interrogatories at 2-3.

[63] See generally McGrath v. Lumbermens Merch. Corp., 851 F. Supp. 2d 855 (E.D. Pa. 2012).

[64] Auman Depo. 9.

performance.[65] Ms. Gottschall was terminated during the third round of layoffs when her matrix score was the lowest among the remaining members in the Accounting Department.[66]

The burden therefore shifts to Ms. Gottschall to prove that this reason is a pretext for discrimination. Ms. Gottschall "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them 'unworthy of credence,' thereby, permitting the inference that the employer acted with a discriminatory purpose."[67] Ms. Gottschall may "survive summary judgment at this step by submitting evidence from which a fact finder could reasonably conclude that "age was the 'but for' cause of the employer's adverse decision."[68]

Ms. Gottschall's primary argument in support of her claim that REC's purported reason was pretextual is that statistical evidence supports her claim that REC's RIF was age-based. She submits "statistical evidence" in the form of exhibits showing the name, age, position, department, tenure, date of birth, and the reason for departure for each employee who either was terminated, retired, or voluntarily resigned in 2006, 2008, and 2009. She asserts that these exhibits show that 78% of the employees selected for layoffs in 2006 through 2009 were individuals over the age of 40.[69] While the Court recognizes that statistical evidence may

---

[65] Auman Depo. 9-10.

[66] Pl.'s Mem. Resp. Def.'s Summ. J., Ex. 8 (Doc. No. 30-10).

[67] Laukagalis v. Unisys Corp., No. 07-4754, 2008 WL 4601935, at *4 (E.D. Pa. Oct. 15, 2008) (quoting Fuentes, 32 F.3d at 765).

[68] Gross v. FBL Fin. Servs. Inc., 557 U.S. 167, 176 (2009).

[69] Pl.'s Resp. in Opposition to Def.'s Mot. Summ. J. at 7-8 (citing Exhibits 3-5).

support the inference that a defendant's given reason for termination is pretextual,[70] Ms. Gottschall's statistical evidence here is insufficient to support such an inference.

"[S]tatistics are not irrefutable; they come in infinite variety and, like any other kind of evidence, they may be rebutted. . . . [T]heir usefulness depends on all of the surrounding facts and circumstances."[71] Ms. Gottschall's statistical evidence is presented without context or analysis. Though Ms. Gottschall claims that 78 percent of the employees selected for lay-off were individuals over the age of 40, REC counters that both before and after each round of lay-offs, approximately 76 percent of the entire workforce was over the age of 40. A 78-percent termination record might support an inference of discrimination if REC had, for example, a workforce where only 25 percent of the individuals were over 40 before the RIF. In the absence of expert statistical analysis as to the significance of what appears to be a two percent differential between the lay-off rate of the protected class and the representative percentage of that class in the workforce, the Court cannot infer that employees were terminated disproportionately based on age. This evidence is insufficient to support an inference of pretext.[72]

Similarly, Ms. Gottschall's claims that she was one of the older and higher-paid members in the Accounting Department are insufficient to support an inference of pretext. First, there is no record evidence that Ms. Gottschall was paid more than other employees in the Department. Second, though Ms. Gottschall was the oldest non-supervisory employee in the Department, her

---

[70] Abrams v. Lightolier Inc., 50 F.3d 1204 (3d Cir. 1995)

[71] Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 340 (1977).

[72] See Dowling v. Citizens Bank, No. 05-914, 2007 WL 2752178, at *9 (W.D. Pa. Sept. 19, 2007) (quoting Cameron v. Infoconsulting Int'l, LLC, No. 04-4365, 2006 WL 1450842, *10-11 (E.D. Pa. May 23, 2006)) ("statistical evidence [i]s not probative [where the] plaintiff[']s [r]aw numerical comparisons" are "not accompanied by any analysis of either the qualified applicant pool or the flow of qualified candidates over a relevant time period"; even less persuasive is plaintiff who "do[es] not even go so far as to offer raw number comparisons, but [instead] offer[s] . . . subjective observations" because "personal beliefs, conjecture and speculation are insufficient to support an inference" of discrimination) (citations and internal quotations omitted).

12

manager, who selected her for termination, and her supervisors were all older than she was, which weakens any inference of discrimination.[73] Finally, the mere fact that she was the oldest non-supervisory employee in the Department is not enough to evidence pretext, when four of the five other employees were in the protected class and at least two of the retained employees were not significantly younger than Ms. Gottschall.[74] Moreover, Ms. Gottschall has not provided any information about these employees that would establish that they are adequate comparators.

Ms. Gottschall's testimony that Mr. Coco treated younger employees more favorably with regard to scheduling issues, allowing them to come in late, leave early, and take time off to visit the doctor whenever they wanted, is also insufficient to satisfy Ms. Gottschall's burden at this step.[75] However, she also testified that Mr. Coco never said or did anything that she considered mean, demeaning or inappropriate, and that before she was terminated he never made any comments about her age or took any actions against her because of her age.[76] Before she was laid off, Ms. Gottschall never felt that Mr. Coco discriminated against because of her age.[77] Further, Mr. Coco's allegedly more favorable treatment of Ms. Ernesto, who is only four years younger than Ms. Gottschall, does not support an inference that he treated Ms. Gottschall less

---

[73] See Allen v. Petsmart, Inc., 512 F. Supp. 2d 288, 295 (E.D. Pa. 2007) ("[T]he decision makers' membership in the same protected class as the plaintiff weakens any inference of discrimination.").

[74] See Narin v. Lower Merion Sch. Dist., 206 F.3d 323, 333 n.9 (3d Cir. 2000); see also Robinson v. City of Philadelphia, 491 F. App'x 295, 299 n.1 (3d Cir. 2012) ("[A]ge differences of less than ten years are not significant enough to make out the fourth part of the age discrimination prima facie case.") (internal quotation marks and citation omitted); Klina v. Se. Pa. Transp. Auth., No. 10-5106, 2011 WL 4572064, at *8 (E.D. Pa. 2011).

[75] Pl.'s Dep. 29-30.

[76] Pl.'s Dep. 32-33, 38; SSMF ¶¶ 8-9, 12.

[77] Pl.'s Dep. 43-44; SSMF ¶¶ 13-14.

favorably or selected her for termination because of her age. In the absence of other evidence of discriminatory intent this statement is insufficient to support a finding of pretext.[78]

Additionally, the fact that Mr. Auman did not tell Ms. Gottschall about the matrix evaluation when he informed her she was selected for termination is not enough to create a jury question of pretext.[79] "Post hoc explanations, like any self-helpful statement made after the initiation of a lawsuit, may be to some degree suspect. However, the mere fact that a defendant relies on a post hoc evaluation does not in and of itself create a factual dispute about whether the evaluation is pretextual."[80] Here, Mr. Auman explained that he gave essentially the same explanation to each employee that was terminated as a result of the RIF—that cuts were necessary as a business matter. He did not mention the matrix evaluation at the time of Ms. Gottschall's termination because he wanted to avoid insulting her. His omission does not give rise to a finding of pretext.[81]

Finally, Ms. Gottschall's assertions about the accuracy of the evaluations also do not support a finding of pretext. Unfounded personal beliefs and conjecture about another employee's qualifications are legally insufficient to support a finding of pretext, and even a bad or inaccurate reason for termination is not a violation of the ADEA unless it is discriminatory.[82] Thus here, even if Plaintiff is able to show that the matrix system was a poor reflection of the

---

[78] While the Court recognizes that "[i]ssues such as intent and credibility are rarely suitable for summary judgment. . . . [because] discriminatory intent means actual motive, and is a finding of fact to be determined by the factfinder," Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2001), in the absence of any evidence suggesting discriminatory motive, Ms. Gottschall cannot sustain her burden at this step.

[79] See Healy v. N.Y. Life Ins. Co., 860 F.2d 1209, 1215 (3d Cir. 1988).

[80] Id.

[81] See Anderson v. Radio One, Inc., No. 09-194, 2010 WL 763869, at *5 (E.D. Pa. Sept. 20, 2010).

[82] Chappell v. GTE Prods. Corp., 803 F.2d 261, 268 (6th Cir. 1986).

14

actual value of employees to the company, this is insufficient to support an inference of pretext absent evidence suggesting a discriminatory motive. Further, Ms. Gottschall states that certain less-qualified employees hid their incompetence from their supervisors.[83] However, this fact weakens Ms. Gottschall's claim because if employees concealed their incompetence from Mr. Coco, then his failure to assess this weakness in the matrix evaluations resulted from a lack of information rather than an age bias.

In sum, Ms. Gottschall has failed to produce sufficient evidence from which a reasonable jury could conclude that REC's given reason for her termination was pretextual.

## IV. CONCLUSION

For the foregoing reasons, REC's Motion for Summary Judgment will be granted and judgment will be entered in favor of REC and against Ms. Gottschall.

An appropriate Order follows.

---

[83] Pl.'s Statement of Additional Material Undisputed Facts ¶¶ 7-17.